UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────

CONRAD WICKS,

                    Petitioner,          05 Civ. 5341

        – against –                      OPINION AND ORDER

DAVID L. MILLER, SUPERINTENDENT,
EASTERN N.Y. CORRECTIONAL FACILITY,

                    Respondent.
─────────────────────────────────

JOHN G. KOELTL, District Judge:

        This is a petition for habeas corpus pursuant to 28 U.S.C.
§ 2254 brought by New York State prisoner Conrad Wicks, who is
currently incarcerated at the Eastern New York Correctional
Facility in Napanoch.  Following a jury trial, the petitioner
was convicted of two counts of Criminal Possession of a Weapon
in the Third Degree.  One count related to possession of a
defaced firearm in violation of New York Penal Law § 265.02(3),
while the other related to possession of a loaded and operable
firearm not in his home or place of business in violation of
§ 265.02(4).  The petitioner was sentenced as a persistent
violent felony offender to concurrent, indeterminate prison
terms of fifteen years to life for each count.  The Appellate
Division, First Department, subsequently modified the
petitioner's sentence by reducing the sentence relating to the
count of possessing a defaced firearm to three and one-half to

seven years because that count is not classified as a violent felony, but it otherwise affirmed the petitioner's conviction. People v. Wicks, 768 N.Y.S.2d 596 (App. Div. 2003).  The petitioner's application for leave to appeal was denied.  People v. Wicks, 808 N.E.2d 1293 (N.Y. 2004) (table).

The petitioner argues that (1) the evidence was legally insufficient to prove his guilt; (2) the prosecutor committed misconduct in his opening statement and summation; (3) defense counsel provided ineffective assistance by failing to challenge the fact that the complaining witness did not testify; (4) the police did not have probable cause to arrest the petitioner and therefore all the evidence recovered should have been suppressed; (5) adjudication of the petitioner as a persistent violent felony offender violated Apprendi v. New Jersey, 530 U.S. 466 (2000); and (6) the prosecutor committed violations of Brady v. Maryland, 373 U.S. 83 (1963), and People v. Rosario, 173 N.E.2d 881 (N.Y. 1961), by failing to disclose evidence relevant to the impeachment of the eyewitness, Alpha Diaby.

For the reasons explained below, the petition for habeas corpus is **denied**.

2

**I.**

The following is a summary of the relevant facts.[1]

At about 2:30 a.m. on December 10, 1998, a cab driver, Alpha Diaby, observed the petitioner holding a gun to the head of a tall, thin African-American woman while another man stood by her side. (Ex. G at 6; Ex. F at 3.) As the petitioner and the other man walked away from the scene, the woman approached the cab and said to one of the passengers, "They just robbed me and . . . stole my purse." (Ex. G at 6-7; Ex. F at 4.) Diaby began following the two men in his cab, and the men then split up. (Ex. G at 7; Ex. F at 4.) In order to continue his pursuit, Diaby ran two red lights before being pulled over by Officer Frank Orosz and Sergeant Michael Sullivan. (Ex. G at 7; Ex. F at 4.) As the officers approached Diaby, he pointed to the petitioner, who was pulling at the doors of a building, and Diaby yelled to the officers that the man "over there" had "just robbed" a woman. (Ex. G at 8; Ex. F at 5.) The petitioner looked in the direction of the officers, began to run, and

---

[1] Because the respondent represents that it has been unable to procure the trial transcript, the parties have relied on the narrative summary contained in the briefs on appeal. See Rule 5(c) of the Rules Governing § 2254 Cases; Smith v. Green, 05 Civ. 7849, 2006 WL 1997476, at *1 n.1 (S.D.N.Y. July 18, 2006) (citing Bundy v. Wainwright, 808 F.2d 1410, 1415 (11th Cir. 1987)). The appellate briefs are attached to the respondent's Declaration of Alyson J. Gill in Opposition to Petition for a Writ of Habeas Corpus as exhibits F (petitioner's brief) and G (the People's brief), and they are referred to herein as "Ex. F" and "Ex. G."

entered into an alley where he was chased by officer Orosz who was yelling, "Police, don't move."  (Ex. G at 8; Ex. F at 5.)

Officer Orosz, while chasing the petitioner, observed the petitioner reach into his waistband or pocket, pull out a hat, and throw it on the ground and then pull out what appeared to be a gun, which the petitioner also threw on the ground.  (Ex. G at 9; Ex. F at 6.)  The pursuit ended when Officer Orosz and Sergeant Sullivan tackled the petitioner and handcuffed him. (Ex. G at 9; Ex. F at 6.)  Shortly thereafter, Officer Orosz and other officers returned to the spot where the petitioner had thrown the objects.  Officer Orosz found a hat, and Officer Christopher O'Connor found a holster, a gun about thirty or forty feet away from the holster with a bullet in the chamber, and a magazine about four or five feet from the gun.  (Ex. G at 9-10; Ex. F at 7.)  The serial number on the gun was scratched off.  (Ex. G at 11.)

Officers later noticed that some components of the magazine, such as the "floorplate" and spring plate, were missing, and Officer Orosz and Sergeant Sullivan returned to the scene and recovered the missing components several hours later by searching under parked cars with a flashlight.  (Ex. G. at 10-11; Ex. F at 8.)  Each of the recovered pieces fit correctly and the gun was successfully reassembled.  (Ex. G at 11; Ex. F at 8.)  Detective Mark Basoa of the Police Department later

determined that the reassembled gun and the ammunition were operable, and he testified that the gun was operable even without the magazine attached provided that a bullet was loaded in the chamber.  (Ex. G at 11-12; Ex. F at 10.)

On September 8, 1999, the jury found the petitioner guilty of two counts of Criminal Possession of a Weapon in the Third Degree, but charges of two counts of Robbery in the First Degree, one count of Robbery in the Second Degree, and one count of Criminal Possession of a Weapon in the Second Degree were dismissed after the jury failed to reach a verdict.  (Ex. F at 9-11.)  On September 30, 1999, the petitioner was adjudicated a mandatory persistent violent felony offender, and on October 5, 1999 he was sentenced to two concurrent sentences of fifteen years to life in prison.  (Ex. F at 11.)  The petitioner filed a timely notice of appeal.

Following unsuccessful efforts to obtain records relating to Diaby, and after he had previously filed and withdrawn an application to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10, on August 27, 2002 the petitioner filed a new pro se motion pursuant to § 440.10 to vacate the judgment of conviction, arguing that the prosecutor withheld evidence relevant to impeaching Diaby in violation of Brady and Rosario, and that his counsel provided ineffective assistance.  (See Ex. A to Gill Decl.)  The Supreme Court, New

York County, denied the petitioner's motion by order dated November 25, 2002. (Ex. C to Gill Decl.)  The court found that at the time of Diaby's testimony, he had no criminal record or pending immigration proceeding, and therefore there was no exculpatory or impeachment evidence that the prosecution was obliged to disclose to the defense. (<u>Id.</u> at 9-10.)  The court further found no support for an ineffective assistance of counsel claim based on a failure to challenge the fact that a complaining witness did not testify at trial because the robbery and second degree weapon possession charges were ultimately dismissed and because the argument could have been raised on direct appeal. (<u>Id.</u> at 11.)

The petitioner sought leave to appeal the denial of his § 440.10 motion to the Appellate Division, First Department. (Ex. D to Gill Decl., at 4.)  The Appellate Division granted leave to appeal, consolidating the appeal with the petitioner's direct appeal from his judgment of conviction. (Exs. D & E to Gill Decl.)

In November 2001, in connection with the direct appeal, the petitioner's counsel filed a brief in the Appellate Division raising the following claims:  (1) the evidence was legally insufficient to prove the petitioner's guilt beyond a reasonable doubt; (2) the petitioner's sentence should be modified by vacating one of the two counts of Criminal Possession of a

Weapon in the Third Degree because they were based on the possession of the same weapon; (3) the petitioner's sentence as a persistent violent felony offender for the non-violent count of possession of a defaced weapon, alternatively, should be vacated; (4) the sentence for the count of possession of a loaded firearm should be vacated and remanded for resentencing because the judge improperly relied on allegations of which the petitioner was not convicted; and (5) the sentences should be reduced in the interest of justice.   (See generally Ex. F to Gill Decl.)   In addition, after his § 440.10 motion was denied, the petitioner filed a supplemental pro se brief in which he claimed that (1) all evidence recovered should have been suppressed because the police did not have probable cause to arrest him and (2) the prosecutor committed misconduct in his opening statement and summation.[2]

The Appellate Division unanimously modified the petitioner's sentence on the conviction for Criminal Possession of a Weapon in the Third Degree based on possession of a defaced weapon in violation of Penal Law § 265.02(3).   People v. Wicks, 768 N.Y.S.2d 596 (App. Div. 2003).   The court also found the

---

[2]   The respondent represents that the New York County District Attorney's Office was unable to provide a copy of the petitioner's pro se supplemental brief or his pro se reply brief on his appeal to the Appellate Division.   The Court has relied on the respondent's submissions, including the District Attorney's brief in opposition to the appeal (Ex. G at 32-43) and the Appellate Division's decision, in determining the arguments raised in these missing pro se submissions.

verdict was based on legally sufficient evidence, declined to dismiss the concurrent count based on possession of the same gun, and held that the petitioner received effective assistance of counsel.  Id. at 596-97.  The court "considered and rejected" all other claims raised in the petitioner's appeal, "including those contained in his pro se supplemental submissions."  Id. at 597.  Leave to appeal to the Court of Appeals was denied. People v. Wicks, 808 N.E.2d 1293 (N.Y. 2004) (table).

The petitioner then filed this petition pursuant to 28 U.S.C. § 2254.  The petitioner subsequently requested a stay of his petition so that he could exhaust a series of claims under Apprendi that he was pursuing by way of a Criminal Procedure Law § 440.20 motion in the New York State Supreme Court.  This Court denied the request in view of the fact that the respondent did not oppose allowing the petitioner to amend his petition to add an Apprendi claim and did not argue that such a claim was unexhausted.  The petitioner then filed an amended petition which included an Apprendi claim, and the amended petition is currently before the Court.  The respondent concedes that all claims raised in this petition were exhausted in the state court.

II.

Because a state court previously adjudicated all of the
petitioner's claims on the merits, this Court evaluates the
petitioner's claims using the deferential standard of review set
forth in 28 U.S.C. § 2254(d).  That section provides, in
relevant part:

> An application for a writ of habeas corpus on behalf
> of a person in custody pursuant to the judgment of a
> State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States . . . .

28 U.S.C. § 2254(d); see Williams v. Taylor, 529 U.S. 362, 402-
03 (2000); Lynn v. Bliden, 443 F.3d 238, 245-47 (2d Cir. 2006).

A state court decision is contrary to clearly established
federal law "if the state court arrives at a conclusion opposite
to that reached by [the Supreme Court] on a question of law" or
"if the state court confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and
arrives at a result opposite to" the Supreme Court's result.
Williams, 529 U.S. at 405.

A state court decision involves "an unreasonable
application of . . . clearly established Federal law" when the
state court "correctly identifies the governing legal rule but
applies it unreasonably to the facts of a particular prisoner's

case." Williams, 529 U.S. at 407-08.  To meet that standard, "the state court decision [must] be more than incorrect or erroneous"; it "must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

As discussed below, the petitioner fails to meet this burden.

### A.

The petitioner argues that the evidence presented at trial was legally insufficient to prove his guilt beyond a reasonable doubt because the People's witnesses presented inconsistent and contradictory testimony and components of the gun's magazine were not recovered until hours after the initial recovery of the gun.  The petitioner's claim is without merit because he has failed to establish that the Appellate Division's determination that the evidence was legally sufficient to prove the petitioner's guilt was contrary to, or based on an unreasonable application of, clearly established federal law.

A petitioner challenging the sufficiency of the evidence supporting the conviction must overcome a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995).  A reviewing court must "view[] the evidence in the light most favorable to the prosecution," and may only grant habeas relief if the petitioner has shown that "upon the record evidence adduced at

the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 324 (1979); see also Hawkins v. West, 706 F.2d 437, 439 (2d Cir. 1983).  In making this determination, a reviewing court may not "make its own subjective determination of guilt or innocence." Herrera v. Collins, 506 U.S. 390, 402 (1993) (quoting Jackson, 443 U.S. at 320 n.13).  To the contrary, it must defer to the jury in making "assessments of the weight of the evidence or the credibility of witnesses" and construe "all possible inferences that may be drawn from the evidence" in the prosecution's favor.  Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  Moreover, "[g]uilt beyond a reasonable doubt may be established entirely by circumstantial evidence, and this evidence must not be reviewed piecemeal, but rather as a whole." Id. (citations omitted).

In reviewing the legal sufficiency of the evidence of a state conviction, this Court looks first to state law to determine the elements of the crime.  Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999).  Under the New York Penal Law, a person is guilty of Criminal Possession of a Weapon in the Third Degree when he possesses any loaded firearm and that possession does not take place in the person's home or place of business.  N.Y. Penal Law § 265.02(4).  A person is also guilty of Criminal Possession of a Weapon in the Third Degree when he possesses a

firearm which has been defaced for the purpose of concealment or
prevention of the detection of a crime.  N.Y. Penal Law
§ 265.02(3).

Viewed in the light most favorable to the prosecution, the
evidence produced at trial was sufficient for a rational trier
of fact to find, beyond a reasonable doubt, that the petitioner
possessed a loaded firearm outside his home or place of business
and that he possessed a firearm that had been defaced for
purposes of concealment or prevention of the detection of crime.
At trial, the witness Diaby identified the petitioner as the man
he saw rob a woman at gunpoint.  The testimony of Officer Orosz
and Sergeant Sullivan established that the petitioner ran away
from them when Diaby pointed at the petitioner, and Officer
Orosz chased the petitioner down an alley.  Officer Orosz saw
the petitioner throw down a hat, and then throw down what
appeared to be a gun.  Officers Orosz and O'Connor recovered the
hat, a gun, and a magazine shortly afterwards in the locations
where Officer Orosz saw the petitioner throw them.  The evidence
further showed that the gun had a bullet in its chamber when
Officer O'Connor picked it up.

While officers did not notice that the magazine was missing
several components until they returned to the precinct, Officer
Orosz and Sergeant Sullivan returned to the same location where
the gun was found and they found the three missing components

nearby.  The components fit with the magazine that Officer O'Connor had found in the same location, and the testimony showed that the assembled gun was operable.  Detective Basoa furthermore testified that even in the absence of a magazine, the gun would be operable provided a bullet was in the chamber, and Officer O'Connor found that a bullet was in the chamber when he recovered the gun.  The evidence also showed that the serial number was scratched off of the firearm.  Contrary to the petitioner's assertion, this evidence does not suggest that the delay in recovering parts of the gun's magazine would prevent any rational juror from finding that the petitioner possessed a loaded, operable, and defaced firearm.

The petitioner claims that inconsistencies in the testimony of the witnesses rendered the evidence insufficient.  However, the inconsistencies were at best tangential to the corroborated accounts that the petitioner possessed a loaded, defaced weapon, which he threw down while being chased by a police officer.  Furthermore, the court must defer to the jury's credibility determinations, Maldonado, 86 F.3d at 35; see also United States v. Strauss, 999 F.2d 692, 696 (2d Cir. 1993), and resolution of conflicting inferences, see Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994).  The petitioner's challenge to Officer Orosz's credibility is therefore insufficient to show that no rational

juror could have reasonably concluded that the petitioner committed the offenses for which he was convicted.

## B.

The petitioner claims that prosecutorial misconduct during the People's opening statement and summation requires the grant of habeas relief.  The claim is unavailing because the Appellate Division's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.

In considering the petitioner's claim, the Court considers "whether the prosecutor[s'] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). In other words, a petitioner must show that the prosecutorial conduct caused "substantial prejudice."  United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981) (per curiam); see also Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (stating a three-factor test for determining "substantial prejudice" from a prosecutor's summation, including the severity of the misconduct, measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements).  In applying this standard, the Court of Appeals for the Second Circuit has noted that "[r]emarks of a prosecutor in summation

14

do not amount to a denial of due process unless they constitute egregious misconduct." United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2000) (internal quotation marks omitted).

In his amended petition, the petitioner does not specify which remarks during the People's opening and summation constituted egregious misconduct, but instead generally alleges that the prosecutor asserted facts not in evidence and called upon the jury to draw conclusions that were not inferable from the facts in the record. However, in his reply brief in support of his amended petition, as in his pro se supplemental brief on direct appeal (see Ex. G at 40-42), the petitioner makes several more specific allegations. First, he contends that the prosecutor improperly vouched for the witness Diaby by rhetorically asking why he would lie about robbery. This remark appears to have been proper argument in response to defense counsel's intimations during summation that Diaby had a motive to fabricate his story and to defense counsel's argument that the jury should decide whether witnesses testified in a way that was "evasive or deceptive." (Id. at 40.) In any event, there is no showing that the petitioner was prejudiced by the remarks.

Next, the petitioner contends that the prosecutor misrepresented facts in his opening statement by stating that Diaby was driving erratically because he was tracking the petitioner's movements and looking for the police, when there

was no evidence establishing that Diaby was looking for the police. However, the jury is presumed to have followed the court's instruction that only its own recollection of the evidence controlled, and there is no reason to believe the jury was unduly influenced by this or any other statement of what the prosecutor expected the evidence to show. Cf. Greer v. Miller, 483 U.S. 756, 766 n.8 (1987).

The petitioner also argues that the prosecutor prejudiced the jury by making an improper "safe streets" argument when he argued that "I don't think any of us want to be the ones who had to chase the defendant down the alleyway that night. . . . [W]e really want our police officers to chase people who have guns." (Pet'r's Reply Mem. of Law, at 27 (citing trial transcript); see also Ex. G at 41.) The court properly sustained defense counsel's objection to this comment, struck it from the record, and directed the jury to disregard the comment. (Ex. G at 41.) The jury is presumed to have followed the court's instruction, and in light of the abundant evidence of the petitioner's guilt the effect of the comment at any rate could not have been "devastating." See Greer, 483 U.S. at 766 n.8.

In sum, the petitioner has failed to identify any statements by the prosecutor tending to suggest that the Appellate Division erred in rejecting his argument of prosecutorial misconduct.

## C.

The petitioner argues that his counsel provided ineffective assistance by failing to challenge the fact that the alleged robbery victim did not testify.  To succeed on such a claim, the petitioner must show that (1) his attorney's conduct "fell below an objective standard of reasonableness" and (2) the defendant was prejudiced as a result of the challenged conduct--that is, "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different."  Strickland v. Washington, 466 U.S. 668, 687–94 (1984).  The petitioner's claim is without merit.

The petitioner predicates his ineffective assistance claim on his counsel's failure to challenge the fact that no victim of the alleged robbery was available.  The robbery charges were ultimately dismissed, so any alleged failings of representation in connection with the dismissed robbery charges cannot have prejudiced the petitioner in the sense explained in Strickland.  The petitioner fails to explain why his counsel's representation fell below an objective standard of reasonableness or why there was a reasonable probability that, but for counsel's conduct, the defendant would not have been charged with and convicted of Criminal Possession of a Weapon in the Third Degree.

**D.**

Finally, the Court declines to grant the petitioner's habeas petition on any of the three remaining grounds, because they do not provide a cognizable basis for habeas relief.

**1.**

The petitioner's Fourth Amendment challenge is not reviewable in a federal habeas proceeding, because the petitioner had a full and fair opportunity to litigate his Fourth Amendment claims during a pretrial hearing based on a motion to suppress evidence. Stone v. Powell, 428 U.S. 465, 481-82 (1976); see also Salcedo v. Smith, 05 Civ. 3497, 2006 WL 1644700, at *3 (S.D.N.Y. June 13, 2006). Collateral review of a Fourth Amendment claim in a habeas petition is only appropriate where (1) the state provides no corrective procedures at all to redress Fourth Amendment violations, or (2) where the state provides such procedures but the petitioner was precluded from using them "because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc)); McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 70 (2d Cir. 1983).

Federal courts have approved of New York's procedure for litigating Fourth Amendment claims, as embodied in New York Criminal Procedure Law § 710.10 et seq., see Capellan, 975 F.2d

at 70 n.1, and the petitioner took advantage of this procedure by filing a motion to suppress certain evidence, which resulted in a pretrial hearing on the issue (see Ex. G at 32-33), and arguing his Fourth Amendment challenge on direct appeal (see id. at 32-38).  The petitioner has shown no "unconscionable breakdown" in this procedure, and therefore review of his Fourth Amendment claim is barred.

2.

The petitioner's suggestion that his adjudication as a persistent violent felony offender violated Apprendi is not tenable, because the Apprendi Court explicitly omitted the fact of a prior conviction from the category of facts that must be determined by a jury.  Apprendi, 530 U.S.at 490; see also United States v. Santiago, 268 F.3d 151, 154-55 (2d Cir. 2001) (a federal statute that permits a trial court to enhance a defendant's sentence for possession of a firearm after finding that the defendant had three previous convictions for certain offenses committed on different occasions does not violate Apprendi).  The Court of Appeals for the Second Circuit has held that the New York Court of Appeals did not act contrary to or unreasonably apply Apprendi in affirming sentences that applied New York's persistent felony offender statute, Penal Law § 70.10.  Brown v. Greiner, 409 F.3d 523, 532-35 (2d Cir. 2005) (reviewing habeas petitions in light of Apprendi and the cases

preceding it, but not Supreme Court decisions subsequent to
Apprendi).  That statute authorizes an enhanced sentence if a
felony offender both (1) has two prior felony convictions, and
(2) has a history and character that the court finds merit
extended incarceration to best serve the public interest.  N.Y.
Penal Law § 70.10; see also Brown, 409 F.3d at 534.

    The persistent violent felony offender statute pursuant to
which the petitioner was sentenced, in contrast, requires an
indeterminate sentence with a maximum term of life and a minimum
term specified in the statute to be imposed whenever the court
finds that a defendant convicted of a violent felony offense was
previously convicted of two or more predicate violent felony
offenses.  See N.Y. Penal Law § 70.08.  This sentence
enhancement depends only upon a finding that the defendant had
certain prior felony convictions, which is precisely the kind of
fact Apprendi and its progeny have explicitly omitted from their
requirement that the jury determine facts that would result in a
sentence greater than the prescribed statutory maximum.  See,
e.g., Cunningham v. California, 127 S. Ct. 856, 864 (2007);
Blakely v. Washington, 542 U.S. 296, 301 (2004); Apprendi, 530
U.S.at 490.  The state court's denial of the petitioner's
challenge to his sentence under the persistent violent felony
offender statute therefore was neither contrary to nor an

unreasonable application of the rules set out in the <u>Apprendi</u>
line of cases.[3]

### 3.

Finally, the Appellate Division's affirmance of the denial
of the petitioner's <u>Brady</u> and <u>Rosario</u> claims was consistent with
federal law and provides no basis for habeas relief.   The
petitioner's <u>Brady</u> claim has no basis in fact because there is
no evidence Diaby had a criminal record at the time of the
trial.   (Ex. C to Gill Decl., at 9-10.)   <u>Cf.</u> <u>Ross v. McCoy</u>,
00 Civ. 804, 2001 WL 30451, at *5 (S.D.N.Y. Jan. 10, 2001) ("The
state is under no obligation to produce evidence that did not
exist.").   The petitioner's <u>Rosario</u> claim is solely a state law
claim and does not present a federal constitutional question
upon which federal habeas corpus relief can be granted.   <u>See</u>
<u>Green v. Artuz</u>, 990 F. Supp. 267, 274-75 (S.D.N.Y. 1998) (citing
<u>United States ex rel. Butler v. Schubin</u>, 376 F. Supp. 1241, 1247

---

[3]   The decision by the Appellate Division in 2003 was issued prior to the
Supreme Court's decisions in <u>Cunningham</u>, <u>United States v. Booker</u>, 543 U.S.
220 (2005), and <u>Blakely</u>.   In any event, there is nothing in those decisions
that suggests that the finding of prior violent felony convictions which,
combined with the current conviction of a violent felony offense, is
sufficient to require application of § 70.08 cannot be made by the court.
   Recently, Judge Gleeson concluded that § 70.10 was unconstitutional
under <u>Apprendi</u> and its progeny because the second finding relating to the
history and character of the defendant went beyond the finding of a prior
conviction and violated the defendant's right to have that fact found by a
jury.   <u>See</u> <u>Portalatin v. Graham</u>, 06 Civ. 5002, 2007 WL 878488 (E.D.N.Y. Mar.
22, 2007).
   That conclusion differs from the interpretation of the statute by the
New York Court of Appeals.   <u>See</u> <u>People v. Rivera</u>, 833 N.E.2d 194 (N.Y. 2005).
   In any event, Judge Gleeson's decision does not affect the purely
factual finding of prior convictions sufficient to trigger § 70.08, the
persistent violent felony offender statute under which Wicks was sentenced.

(S.D.N.Y. 1974) (Weinfeld, J.), aff'd, 508 F.2d 837 (2d Cir. 1975) (table)).   The petitioner has also failed to specify any Rosario material that the prosecution did not disclose.

CONCLUSION

For the reasons explained above, the petition for habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**.   The Court declines to issue a certificate of appealability because the petitioner has failed to make a substantial showing of a denial of a constitutional right.   See 28 U.S.C. § 2253(c).   The Clerk of the Court is directed to enter judgment dismissing the petition and closing this case.

**SO ORDERED**

Dated:     New York, New York
           May 14 , 2007

                                        John G. Koeltl
                                United States District Judge